## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                Plaintiff,

v.

THE SALVATION ARMY,
                Defendant.

_____/

Case No. 2:22-cv-11973-SJM-CI
Hon. Stephen J. Murphy, III
Magistrate Judge Curtis Ivy, Jr.

## JOINT DISCOVERY PLAN

In accordance with the Court's Order dated October 18, 2022 (ECF No. 9), and having met and conferred in accordance with Rule 26(f) on November 3, 2022, the parties submit the following as their Joint Discovery Plan:

### 1) Jurisdiction

Plaintiff contends the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345, as well as Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3).

Defendant, The Salvation Army ("Defendant" or "The Salvation Army") admits that this Court has jurisdiction over Plaintiff's claims.

### 2) Statement of the Case

**(a)** Plaintiff asserts that Gregory Mark ("Mark") is an individual who

had multiple qualifying disabilities under the Americans with Disabilities Act ("ADA") when he was hired by Defendant as a cashier, including but not limited to scoliosis, Asperger's Syndrome, bipolar disorder, anxiety/depression, dyspraxia (developmental coordination disorder) and dyskinesia (involuntary movement of face and extremities). Defendant was informed of Mark's disabilities at the time of his hire. Mark's job coach(es) were permitted to provide coaching for him during his probationary period, which he completed successfully. Subsequently, a new store manager replaced the hiring manager. She immediately displayed animosity towards Mark's disability-related appearance and behavior. The new manager repeatedly made disparaging comments about Mark's disability-related appearance and behavior, increased his hours in excess of what had been agreed upon, refused to allow additional job coaching despite repeated requests, refused to engage in the interactive process, hired new cashiers and then fired Mark because of his disabilities.

**(b)** Defendant respectfully asserts that this case involves a single ADA claim of discriminatory discharge. Plaintiff's Complaint includes allegations of failure to accommodate, "unlawful practices" under the ADA, "disparaging comments," and harassment – all of which are time-barred, as admitted by the Equal Employment Opportunity Commission ("EEOC") in their Determination, dated February 10, 2022. As set forth more fully below - Defendant discharged Mark because he was unqualified for his position and/or due to legitimate and non-discriminatory reasons.

On July 17, 2018, Mark joined The Salvation Army as a Thrift Store Clerk (cashier). Upon information and belief, Mark interviewed and began employment with some assistance from a job coach with Michigan Ability Partners ("MAP"); however, Defendant has no relationship or agreement with MAP, nor does Defendant have any documentation from MAP.

The essential job duties of a Thrift Store Clerk are straightforward and include: ringing up merchandise, totaling bills, accepting payment and making correct change for customers, and providing prompt and courteous assistance to customers. It is imperative that

Thrift Store Clerks be able to operate a cash register because every dollar counts at The Salvation Army. To ensure a positive shopping experience and encourage customers to return, cashiers must process transactions accurately and communicate with customers in a professional and appropriate manner. Specifically, cashiers are expected to refrain from using profanity, especially in close proximity to customers.

Less than two months after joining The Salvation Army, Mark received a written warning for "substandard job performance" under his first Store Manager, Alonzo Oliver. Mark permitted an overage at the cash register on August 21, 2018 ($11.07) and a shortage at the cash register on September 7, 2018 ($5.38). Mark was advised to "pay close attention when handling money and take his time with each transaction," and he was warned that "any further shortage /overage will result in suspension and or termination...." Despite this explicit warning, on March 1, 2019, Mark received a second written warning because he again overcharged a customer by approximately $9.00, upsetting the customer. In the second written warning, new Store Manager, Catherine Wale, advised (reminded) Mark that he needed to "charge customers the correct amount for their purchases & check each item of [sic] the price," and she warned Mark that "[f]ailure to do so will result in further disciplinary action up to termination." Additionally, Mark struggled with maintaining professionalism when ringing up customers. On January 29, 2019, he received a third written warning for swearing in front of a customer.

Ms. Wale has no recollection of MAP trying to assist at this time, and, again, there is no record of any such attempt.

Finally, on May 16, 2019, after another customer incident and multiple warnings, The Salvation Army discharged Mark because he was unqualified for his position and/or due to legitimate and non-discriminatory reasons.

### 3) Pendent State Claims

This case does not include pendent state claims.

Client Documents\4857-7906-2078.v1-11/13/22

## 4) Joinder of Parties and Amendment of Pleadings

The parties do not anticipate joinder of additional parties or amendment of the pleadings.

## 5) Disclosures and Exchanges

The parties cannot agree on voluntary production at this time.

## 6) Discovery

The parties believe that all discovery proceedings can be completed by May 1, 2023. The parties recommend the following discovery plan, and acknowledge that if the Court believes that discovery motions have been filed unnecessarily, in bad faith, or for vexatious or tactical reasons, the Court may appoint a Discovery Master to shift the costs of disposing of these motions from the Court to the parties:

| | |
|---|---|
| Discovery Begins: | 11/16/2022 |
| Initial Disclosures Due: | 12/09/2022 |
| Witness List Disclosures Due: | 01/30/2023 |
| Expert Disclosures Due: | 03/02/2023 |
| Discovery Ends: | 05/01/2023 |
| Dispositive Motions Due: | Date to be set by Court on or after 06/01/2023 |

## 7) Disclosure / Discovery of Electronically Stored Information (ESI)

The parties have discussed the production of electronically stored information and suggest that such information be handled as follows:

The parties agree to make all reasonable efforts to produce documents in accordance with the specifications identified in this section.

E-mail and User Created Files

Client Documents\4857-7906-2078.v1-11/13/22

Email will be produced in single-page TIFF format (300 DPI resolution) with a delimited DAT file containing ordinary metadata fields, accompanied by an Opticon (OPT) cross-reference file and corresponding document-level extracted text. Ordinary metadata fields shall at a minimum include custodian, author, record type, a group ID for the family (to allow identification of all e-mail that are part of one chain and all attachments to that chain), to, from, cc, bcc and subject.

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in native format with an associated placeholder image. All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved. Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production, to the extent possible.

PDF Files

Documents kept in PDF format in the usual course of business shall be produced in logically unitized format. Such documents shall not be combined, merged, or otherwise joined if they are not so organized in the usual course of business. Files usually maintained electronically in a different file type (Excel, JPG, etc.) but converted to PDF format and produced, will not be accepted. "Logically unitized" means that all pages that belong together as a document, and only those pages, are produced as one document, with relationships such as parent and child attachments maintained. Documents that are bulk-scanned to non-unitized files will not be accepted.

Method of Production

Where possible, productions should be delivered by electronic means.

Client Documents\4857-7906-2078.v1-11/13/22

<u>Purpose</u>

The parties agree that the purpose of the above provisions is not to be overly burdensome to any party, but to facilitate appropriate identification, categorization and searching of relevant ESI. Should any party have technical problems regarding any of the above, the parties will meet and confer regarding the same, and express a willingness to have an appropriate IT representative provide support to or participate in such a process.

## 8) Assertion of Claims of Privilege or Work-Product Immunity After Production

The parties agree to follow the Federal Rules of Civil Procedure, as well as federal law, concerning claims of privilege and the inadvertent production of privileged materials.

## 9) Motions

The parties acknowledge that Local Rule 7.1 requires a moving party to ascertain whether any motion will be opposed. All motions must affirmatively state the efforts of the moving party to comply with the obligation created by Local Rule 7.1. All nondispositive motions must be accompanied by a certificate setting forth in detail the efforts of the moving party to comply with the obligation created by Local Rule 7.1. All discovery motions must be accompanied by a certificate and any relevant documentation or correspondence detailing the movant's attempts to seek resolution of the discovery dispute before filing the motion. The parties also acknowledge that Civil Rule 78(b) allows the Court to submit and determine motions on the briefs, without a hearing. Last, the parties acknowledge that the Court prefers parties do not file courtesy copies of motions and briefs.

The following dispositive motions are contemplated by each party:

Plaintiff does not anticipate filing dispositive motions at this time, but a motion for partial summary judgement as to liability may become appropriate, depending on discovery.

Client Documents\4857-7906-2078.v1-11/13/22

Defendant does anticipate filing a timely motion for summary judgment.

## 10)     Alternative Dispute Resolution

The parties acknowledge that if they attend a private mediation, they will provide the Court with the mediator's contact information along with the date of the mediation in advance. The parties also acknowledge that the Court reserves the right under Local Rule 16 to order alternative dispute resolution, and recommend that this case be submitted to the following method(s) of alternative dispute resolution:

Plaintiff is open and willing to engage in settlement discussions. Plaintiff is willing to negotiate a resolution directly with Defendant. In the alternative, Plaintiff is willing to appear for a settlement conference with the Court or participate in a private facilitation with a mutually-agreed upon facilitator. Plaintiff is not amenable to case evaluation (Local Rule 16.5 and MCR 2.403).

Defendant is open and willing to engage in settlement discussions after the completion of substantial discovery, at which point Defendant is willing to negotiate a resolution directly with Plaintiff, appear for a settlement conference with the Court, and/or participate in a private facilitation with a mutually-agreed-upon facilitator. Defendant is also not amenable to case evaluation (Local Rule 16.5 and MCR 2.403).

## 11)     Jury

This case is to be tried before a jury.

## 12)     Length of Trial

Counsel estimate the trial will last approximately 5 days total, lasting from 8:30 a.m. to 2:00 p.m. each day, allocated as follows:

2 ½ days for Plaintiff's case
2 ½ days for Defendant's case

Client Documents\4857-7906-2078.v1-11/13/22

**13)      Prospects of Settlement**

The status of settlement discussions is:

There have been no settlement discussions since the case was filed. It is possible the parties will discuss settlement after the completion of substantial discovery.

**14)      Electronic Document Filing System**

Counsel acknowledges that Local Rule 5.1 requires the attorneys file and serve all documents electronically, by means of the Court's CM/ECF system, unless the party has been excused from electronic filing on motion for good cause shown. The Court expects all counsel to abide by the requirements of this rule. Pro se parties (litigants representing themselves without the assistance of a lawyer) acknowledge that they must submit their documents to the Clerk on paper, in a form complying with the requirements of the local rules. Counsel opposing a pro se party acknowledges that they must file documents electronically but serve pro se parties with paper documents in the traditional manner.

**15)      Other**

Nothing at this time.

Respectfully submitted,


_/s/ Miles L. Uhlar_____
Miles L. Uhlar (P65008)
Equal Employment Opportunity Commission
477 Michigan Avenue, Rm 865
Detroit, MI 48226
(313) 226-4620
miles.uhlar@eeoc.gov

-9-

                __/s/ John Below_____
                John Below (P48677)
                Gary S. Fealk (P53819)
                Rebecca Seguin-Skrabucha (P82077)
                Attorneys for Defendant
                BODMAN PLC
                201 W. Big Beaver Rd., Ste 500
                Troy, MI 48084
                (248) 743-6000
                jbelow@bodmanlaw.com
                gfealk@bodmanlaw.com
                rseguin-skrabucha@bodmanlaw.com

Date:      November 14, 2022